Andrew R. Missel (OSB # 181793)
Elizabeth H. Potter (OSB # 105482)
Hannah A. Goldblatt (OSB # 205324)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave., Ste. B
Portland, OR 97202
(503) 914-6388
amissel@advocateswest.org
epotter@advocateswest.org
hgoldblatt@advocateswest.org


*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **XERCES SOCIETY FOR INVERTEBRATE CONSERVATION and CENTER FOR BIOLOGICAL DIVERSITY,** | **Case No.: 3:22-cv-00790-HZ** |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPENING BRIEF ON REMEDIES** |
| **KEVIN SHEA, in his official capacity as Administrator of the Animal and Plant Health Inspection Service; and the ANIMAL AND PLANT HEALTH INSPECTION SERVICE,** | |
| Federal Defendants, | |
| and | |
| **STATE OF WYOMING and STATE OF MONTANA**, | |
| Intervenor-Defendants. | |

PLAINTIFFS' OPENING BRIEF ON REMEDIES

## PLAINTIFFS' OPENING BRIEF ON REMEDIES

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.    The Court Should Remand the 2019 EIS to APHIS with Instructions to Prepare a New EIS Within Two Years. ................................................................. 2

    A.    The Court Should Require APHIS to Prepare a New EIS and Should Provide Instructions to Ensure that APHIS Corrects the Deficiencies in the 2019 EIS ................................................................................................. 2

    B.    The Court Should Set a Two-Year Deadline for the New EIS. ................. 5

II.    The Court Should Enter Narrow Interim Injunctive Relief to Hold APHIS to Its Own Notification and Disclosure Commitments. .................................................... 7

    A.    Plaintiffs Are Likely to Suffer Irreparable Harm Absent Injunctive Relief. ........................................................................................................ 8

    B.    The Equities Weigh in Favor of Limited Injunctive Relief. .................... 11

    C.    The Public Interest Favors Limited Injunctive Relief. ............................. 13

    D.    The Requested Relief Is Narrowly Tailored to Address APHIS's NEPA Violations. ............................................................................................... 15

III.    The Court Should Vacate the Wyoming and Montana EAs. ............................... 16

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*350 Montana v. Haaland,*
  50 F.4th 1254 (9th Cir. 2022) ........................................... 16

*Alliance for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ........................................... 14

*Alliance for the Wild Rockies v. U.S. Forest Serv.,*
  907 F.3d 1105 (9th Cir. 2018) ........................................... 16

*Alliance for the Wild Rockies v. Zinke,*
  265 F.Supp.3d 1161, 1181 (D. Mont. 2017)........................... 2

*Allied-Signal, Inc. v. Nuclear Regul. Comm'n,*
  988 F.2d 146 (D.C. Cir. 1993) ........................................... 18

*Amoco Prod. Co. v. Village of Gambell,*
  480 U.S. 531 (1987)........................................... 8, 11, 13

*Bernhardt v. Los Angeles Cnty.,*
  339 F.3d 920 (9th Cir. 2003) ........................................... 13

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018) ........................................... 9

*California v. Block,*
  690 F.2d 753 (9th Cir. 1982) ........................................... 2

*Cal. Cmtys. Against Toxics v. EPA,*
  688 F.3d 989 (9th Cir. 2012) ........................................... 17

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.,* No. C 06-4884 SI,
  2011 WL 337364 (N.D. Cal. Jan. 29, 2011) ........................ 2

*Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.,*
  538 F.3d 1172 (9th Cir. 2008) ........................................... 3

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.,*
  944 F.3d 773 (9th Cir. 2019) ........................................... 9

*Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs,*
  466 F.Supp.3d 1217 (W.D. Wash. 2020)........................... 16

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
    144 S.Ct. 2440 (2024) ........................................................................................ 16

*Env't Prot. Info. Ctr. v. Carlson*,
    968 F.3d 985 (9th Cir. 2020) ............................................................................... 9

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ............................................................................ 13

*Idaho Conservation League v. Guzman*, No. CV 4:10-26-E-REB,
    2011 WL 13134014 (D. Idaho Nov. 1, 2011) ................................................. 5, 7

*'Ilio'ulaokalani Coal. v. Rumsfeld*,
    464 F.3d 1083 (9th Cir. 2006) ............................................................................. 2

*In re Core Commc'ns, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008) ............................................................................. 6

*League of Wilderness Defs./Blue Mtns. Biodiversity Project v. Peña*, No. 3:12-cv-02271-HZ,
    2015 WL 1567444 (D. Or. April 6, 2015) ................................................... 17, 18

*Mont. Env't Info. Ctr. v. Haaland*, CV 19-130-BLG-SPW,
    2024 WL 1406535 (D. Mont. Apr. 2, 2024) ........................................................ 7

*Nat'l Family Farm Coal. v. EPA*,
    966 F.3d 893 (9th Cir. 2020) ............................................................................. 16

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    524 F.3d 917 (9th Cir. 2008) ............................................................................... 6

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    886 F.3d 803 (9th Cir. 2018) ............................................................................... 7

*Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*,
    625 F.3d 1092 (9th Cir. 2010) ........................................................................... 15

*Or. Nat. Res. Council v. Devlin*,
    776 F.Supp. 1440 (D. Or. 1991) .............................................................. 7, 15, 16

*Pollinator Stewardship Council v. EPA*,
    806 F.3d 520 (9th Cir. 2015) ............................................................................... 2

*W. Watersheds Project v. Bernhardt*,
    428 F.Supp.3d 327 (D. Or. 2019) ...................................................................... 17

*Westlands Water Dist. v. U.S. Dep't of the Interior*,
   376 F.3d 853 (9th Cir. 2004) ........................................................................................... 3

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) ............................................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................................. 8

## Statutes

42 U.S.C. § 4336a ............................................................................................... 3, 4, 6, 7

## Court Rules

Fed. R. Civ. P. 60 ..................................................................................................... 7

## INTRODUCTION

In this case, Plaintiffs challenged six decisions by the Animal and Plant Health Inspection Service ("APHIS") related to its rangeland pesticides program ("the Program"). These decisions are reflected in six separate sets of documents: the 2019 programmatic environmental impact statement ("EIS") and associated record of decision ("ROD") and five state-level environmental assessments ("EAs") and associated findings of no significant impact ("FONSIs"). In its summary-judgment order, the Court ruled that APHIS violated the National Environmental Policy Act ("NEPA") in making each of the six challenged decisions.[1] *See* SJ Order (ECF No. 83). In accordance with the Court's order of October 4, 2024, ECF No. 88, Plaintiffs now submit this brief regarding the appropriate remedy for APHIS's violations of NEPA.

As Plaintiffs indicated at the summary-judgment hearing, vacatur of the 2019 programmatic EIS and associated ROD is not appropriate in this case, because such relief would do more harm than good to Plaintiffs' interests in the environment. Instead of vacating the EIS and ROD, the Court should remand to APHIS to prepare a new EIS in accordance with the Court's instructions. In addition, during the period when APHIS is preparing a new EIS, the Court should require APHIS to honor its past commitments to public notification of pesticide treatments conducted under the Program.

For the state-level EAs and FONSIs, vacatur—the presumptive remedy under the Administrative Procedure Act ("APA")—is appropriate. This is not one of the rare occasions where remand without vacatur is warranted, so the Court should simply set aside the challenged EAs and FONSIs.

---

[1] Plaintiffs also brought an Endangered Species Act claim against APHIS. APHIS completed consultation under the Endangered Species Act on the eve of the summary-judgment hearing, mooting that claim. *See* SJ Order (ECF No. 83) at 3 n.1.

**ARGUMENT**

**I.    The Court Should Remand the 2019 EIS to APHIS with Instructions to Prepare a New EIS Within Two Years.**

Plaintiffs do not seek vacatur of the 2019 EIS, because this would have the effect of restoring the 2002 EIS, which is no better for the environment than the 2019 EIS. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) ("When deciding whether to vacate rulings by the EPA, we consider whether vacating a faulty rule could result in possible environmental harm, and we have chosen to leave a rule in place when vacating would risk such harm."). Instead, Plaintiffs ask the Court to remand the 2019 EIS to APHIS without vacatur and with instructions to prepare a new EIS within two years. In addition, the Court should instruct APHIS to take steps to ensure that it is able to fully consider a full suite of integrated pest management ("IPM") techniques in the new EIS.

**A.    The Court Should Require APHIS to Prepare a New EIS and Should Provide Instructions to Ensure that APHIS Corrects the Deficiencies in the 2019 EIS.**

When a court finds that an agency made a decision based on a flawed NEPA analysis and remands to the agency, it is often appropriate to "provide the agency with specific instructions to address its errors." *Alliance for the Wild Rockies v. Zinke*, 265 F.Supp.3d 1161, 1181 (D. Mont. 2017). For instance, a court may order an agency to consider a particular alternative or type of alternative in its new NEPA analysis after determining that the agency failed to consider a reasonable range of alternatives. *See, e.g.*, *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1102 (9th Cir. 2006) (requiring the Army to consider a particular type of alternative); *California v. Block*, 690 F.2d 753, 767 (9th Cir. 1982) (affirming "the district court's ruling that the [agency] must consider [a particular] alternative"); *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. C 06-4884 SI, 2011 WL 337364, at *2 (N.D. Cal. Jan. 29, 2011) (requiring the

agency to "consider[] a broader range of alternatives, including at least one alternative that analyzes a less extensive route network for the Western Mojave area"). A court may also order the agency to prepare a particular type of NEPA document on remand—for instance, an EIS rather than an EA. *See Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1225 (9th Cir. 2008).

Plaintiffs first ask the Court to remand to APHIS with instructions to prepare a new EIS rather than a supplemental EIS. This instruction is appropriate given the nature of the deficiencies in the 2019 EIS. The Court ruled that the EIS's "purpose and need statement is invalid," SJ Order at 19, and that APHIS erred by failing to "consider[] IPM techniques as either a standalone alternative or in conjunction with other treatment," *id.* at 21. Accordingly, on remand, APHIS must define the purpose and need of its EIS broadly enough to allow for consideration of more IPM techniques as part of one or more alternatives. *See id.* at 18–19 ("[T]he Court finds that APHIS has been tasked with carrying out a program to control grasshoppers to protect rangelands, and, in doing so, must use IPM techniques *and* treat lands infested with grasshoppers at a level of economic infestation when requested."). This calls for a new EIS, not a supplemental EIS, because of the centrality of the purpose and need statement to an EIS: "[p]roject alternatives derive from an EIS's Purpose and Need section," and "consideration of alternatives is the heart of the [EIS]." *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 865 (9th Cir. 2004) (cleaned up). APHIS must fundamentally rethink "the underlying purpose and need" for the Program, 42 U.S.C. § 4336a(d), which it cannot do merely by supplementing its flawed 2019 EIS.

Plaintiffs also ask the Court to instruct APHIS to take all necessary steps to address the deficiencies in the 2019 EIS identified by the Court. *See* Proposed Remedies Order at 1–2.[2] Specifically, Plaintiffs ask the Court to include language along the following lines in its remedies order:

> The new EIS for the Program must address the deficiencies with the 2019 EIS identified in the Court's summary-judgment order, ECF No. 83. In addressing the failure to consider integrated pest management ("IPM") techniques, APHIS shall take all necessary steps to ensure that it is able to meaningfully consider such techniques in the new EIS. This may include, *inter alia*, designating "any Federal, State, Tribal, or local agency that has jurisdiction by law or special expertise with respect to any environmental impact involved in [APHIS's] proposal to serve as a cooperating agency," 42 U.S.C. § 4336a(a)(3); "request[ing] the participation of each cooperating agency at the earliest practicable time," *id.* § 4336a(a)(2)(B); and "giv[ing] consideration to any analysis or proposal created by a cooperating agency" when preparing the new EIS, *id.* § 4336a(a)(2)(C).

Proposed Remedies Order at 1–2.

This instruction would ensure that APHIS can address the problems identified by the Court in its summary-judgment order. In its order, the Court ruled that APHIS must consider alternatives that incorporate more IPM techniques. SJ Order at 18–21. According to APHIS, many IPM techniques are wholly or partly within the jurisdiction of other agencies. *See* EIS000029 ("the responsibility for implementing most land management practices lies with other Federal ..., State, and private land managers"); EIS000115 ("most IPM actions are not managed by APHIS"). Thus, in order to fully address the problems with the EIS identified by the Court, APHIS will almost certainly need to involve other agencies in the NEPA process, either as co-lead agencies or as "cooperating agencies." *See* 42 U.S.C. § 4336a(a)(3) (describing a cooperating agency as "any Federal, State, Tribal, or local agency that has jurisdiction by law or special expertise with respect to any environmental impact involved in a proposal"). In fact,

---

[2] Plaintiffs are submitting a proposed remedies order along with this brief.

APHIS has stated in the past that "the *only* way for dealing with grasshopper ... outbreaks, with all reasonable alternatives (such as forecasting, prevention and, a more broad emphasis on [IPM]), is to conduct the [EIS] process jointly with area land managers." EIS014653 (emphasis added).

This is what APHIS did when preparing the 1987 EIS for the Program: it invited the Bureau of Land Management ("BLM"), the U.S. Forest Service, and the U.S. Fish and Wildlife Service ("USFWS") to be cooperating agencies. EIS008656. Those agencies then participated in the NEPA process, which allowed APHIS to fully consider, and ultimately select, a genuine IPM alternative. *See* EIS008659–63, 8701–10 (describing the selected alternative). APHIS did not even invite these other agencies to serve as cooperating agencies in the preparation of the 2019 EIS.

By instructing APHIS to "take all necessary steps to ensure that it addresses the deficiencies with the 2019 EIS"—and by specifically citing NEPA's cooperating agency provisions—the Court would be making clear to APHIS that it cannot avoid considering IPM techniques by refusing to involve other agencies with jurisdiction over those techniques in the NEPA process. To the extent that considering a reasonable range of alternatives requires the involvement of other agencies (and it almost certainly does, as APHIS itself has recognized, EIS014653), APHIS must take steps to involve those agencies in the preparation of the new EIS.

**B.    The Court Should Set a Two-Year Deadline for the New EIS.**

When an agency's NEPA analysis is found to be legally inadequate, it is often appropriate for a court to set a deadline for the agency to complete a new NEPA analysis, especially when the decision is remanded without vacatur. *See Idaho Conservation League v. Guzman*, No. CV 4:10-26-E-REB, 2011 WL 13134014, at *22–23 (D. Idaho Nov. 1, 2011)

(imposing a deadline on remand because otherwise "the flawed decision will be in place indefinitely"); *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 937 (9th Cir. 2008) (discussing a court's power to "impose a deadline for the remand proceedings" in the context of an Endangered Species Act claim). Without a deadline, remand without vacatur can "invite[] agency indifference." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring).

Plaintiffs ask the Court to require APHIS to complete a new EIS within two years of final judgment. This timeline is entirely consistent with NEPA, which sets a default deadline of two years for an agency to complete an EIS. 42 U.S.C. § 4336a(g)(1)(A). In this case, the Court's order to prepare a new EIS would serve as the determination that a new EIS is required, triggering the two-year deadline. *See id.* § 4336a(g)(1)(A)(i).

The need for a deadline for APHIS to complete a new EIS is evident from APHIS's lengthy delay in completing Endangered Species Act consultation over the Program with USFWS. When this lawsuit was filed, APHIS and USFWS had last completed programmatic ESA consultation over the Program in 1995. OR000565. The agencies reinitiated consultation in 2015, EIS020889, but they had still not completed the process by May 2022, when Plaintiffs sent a notice-of-intent-to-sue letter. EIS021089. It was not until March 21, 2024—literally the eve of the summary-judgment hearing in this case—that APHIS and USFWS finally completed programmatic consultation. *See* Fed. Defs.' Notice Re: Completion of Programmatic ESA Consultation (ECF No. 79). Without a deadline, there is a serious risk that APHIS will act in a similarly languid manner in completing its new EIS. To avoid having a "flawed decision [left] in

place indefinitely," the Court should impose a two-year deadline. *Guzman*, 2011 WL 13134014, at *22.[3]

## II.    The Court Should Enter Narrow Interim Injunctive Relief to Hold APHIS to Its Own Notification and Disclosure Commitments.

In addition to the relief described above, the Court should enter narrow interim injunctive relief to hold APHIS to its notification commitments and ensure timely public disclosure of information about its pesticide treatments. To obtain an injunction, Plaintiffs must show that (1) they are likely to suffer irreparable harm absent injunctive relief, (2) the balance of equities tips in their favor, and (3) an injunction would not disserve the public interest. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 817 (9th Cir. 2018). "Relief under NEPA must be tailored to remedy the particular violation ...." *Or. Nat. Res. Council v. Devlin*, 776 F.Supp. 1440, 1450 (D. Or. 1991).

Plaintiffs ask that the Court order APHIS to do the following:

(1) **Advance Notification of Treatments.** The Court should require APHIS to notify the public in advance of planned pesticide treatments under the Program. Proposed Remedies Order at 2–3.

(2) **Timely Disclosure of Pre-Treatment Analyses.** The Court should require APHIS to disclose to the public in a timely fashion the analyses underlying each decision to conduct a pesticide treatment under the Program. *Id.* at 3–4.

---

[3] If factors beyond APHIS's control make it impossible for it to finalize a new EIS within two years, APHIS can move this Court for a new deadline under Federal Rule of Civil Procedure 60(b)(5). *See Mont. Env't Info. Ctr. v. Haaland*, CV 19-130-BLG-SPW, 2024 WL 1406535, at *2–4 (D. Mont. Apr. 2, 2024) (granting an agency's request under Rule 60(b)(5) for a new deadline to complete an EIS). In that event, it would be proper for the Court to grant "a new deadline that provides only so much additional time as is necessary to complete" the new EIS. 42 U.S.C. § 4336a(g)(2). But it is Congress's judgment that APHIS should be able to complete a new EIS within two years.

(3) **Disclosure of Treatment Records and Post-Treatment Monitoring Data.** The

Court should order APHIS to disclose full treatment records, including any post-

treatment monitoring data, at the end of each spraying season. *Id.* at 4–5.

As discussed below, this narrow relief will prevent or ameliorate irreparable harm to

Plaintiffs while imposing a de minimis burden on APHIS.

A.     **Plaintiffs Are Likely to Suffer Irreparable Harm Absent Injunctive Relief.**

In finding that Plaintiffs have Article III standing, the Court has already determined that

there is at least a "reasonable probability" that Plaintiffs will be injured by APHIS's activities.

*See Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1013 (9th Cir.

2021) (setting out the test for standing for procedural injuries); SJ Order at 9 (concluding that

"there is a 'reasonable probability' that APHIS's actions threaten [Plaintiffs'] interests"). Those

injuries—injuries to Plaintiffs' recreational, scientific, spiritual, and aesthetic interests—will be

"irreparable," because they cannot be remedied by money damages. *See Amoco Prod. Co. v.

Village of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom

be adequately remedied by money damages and is often permanent or at least of long duration,

*i.e.*, irreparable."), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7 (2008). Thus, Plaintiffs have already demonstrated a "reasonable probability" that they

will suffer irreparable harm without an injunction. The question is whether they are *likely* to

suffer such harm.

The standing declarations filed with Plaintiffs' motion for summary judgment, together

with the Supplemental Burd and Selvaggio Declarations filed concurrently with this brief,

demonstrate that it is "likely" that Plaintiffs will suffer some degree of irreparable harm absent

injunctive relief.[4] Based on its activities in recent years, APHIS is almost certain to continue to spray pesticides all over the West as part of the Program, and those pesticide treatments are likely to cluster in the same "hot spots" described in Plaintiffs' summary judgment briefing. *See* SJ Order at 9–10 (discussing the overlap between APHIS's spraying activities and Plaintiffs' members' travels); *see also* Pls.' SJ Reply (ECF No. 74) at 11–12. APHIS's recent spray activities bear this out. In 2023, for instance, APHIS once again sprayed areas adjacent to the Malheur National Wildlife Refuge in Harney County, Oregon, and also sprayed areas north and northwest of Mann Lake. *See* Missel Decl. (ECF No. 90) Ex. 1 at 6–8 (showing 2023 sprays). These same areas have been sprayed repeatedly in recent years. *See* Goldblatt Decl. (ECF No. 54) Exs. B, J.

Meanwhile, Plaintiffs' members will continue to visit these areas. *See* Burd Decl. (ECF No. 49) ¶¶ 13–27 (discussing travels in Oregon, Nevada, and Idaho); Supplemental Burd Decl. (ECF No. 91) ¶¶ 4–9 (discussing further travels in Oregon and Nevada); Selvaggio Decl. (ECF No. 48) ¶¶ 13–21 (Oregon); Rosentreter Decl. (ECF No. 50) ¶¶ 11–14 (Idaho); Lyman Decl. (ECF No. 51) ¶¶ 9–15 (Montana); Ostermann Decl. (ECF No. 52) ¶¶ 4–9 (Wyoming). During their visits, their recreational, aesthetic, scientific, and spiritual interests in these areas— including their interests in the insects, birds, and other animals and plants affected by the Program—are likely to be negatively impacted by APHIS's pesticide spraying activities. *See, e.g.*, Burd Decl. ¶¶ 13–27. In this way, Plaintiffs are likely to suffer irreparable harm in the absence of injunctive relief. *See, e.g.*, *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 991 (9th

---

[4] Plaintiffs need not show that they will suffer a large degree of irreparable harm; the irreparable harm "analysis focuses on irreparability, irrespective of the magnitude of the injury." *City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, 944 F.3d 773, 806 (9th Cir. 2019) (quoting *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)).

Cir. 2020) (concluding that the plaintiff had shown irreparable harm based on a member's affidavit that "her enjoyment of the National Forest will be diminished" by the agency's activities).

Plaintiffs' requested injunctive relief would help prevent or ameliorate this harm. When Plaintiffs and the general public are made aware of APHIS's pesticide spraying activities under the Program with sufficient notice, they can bring to APHIS's attention information about sensitive resources that may be affected by those treatments. This, in turn, can lead APHIS and its partner agencies to rethink, or even abandon, their spraying plans, avoiding or reducing harm to Plaintiffs.

This is not speculation—this happened in 2023 in New Mexico. In June 2023, Sharon Selvaggio, a Xerces employee and declarant in this case, discovered that APHIS was planning an aerial pesticide treatment in northern New Mexico later in the month. Supplemental Selvaggio Decl. (ECF No. 92) ¶¶ 7–8. She quickly notified other conservation organizations, who reached out to BLM and APHIS with concerns about the planned spray. *Id.* ¶¶ 8–9. These groups (including Xerces) pointed out that the planned treatment covered part of a Wilderness Study Area and habitat for bumble bees, fireflies, and the Monarch butterfly. *See id.* Exs. 2 & 3 (letters to BLM and APHIS). Ultimately, BLM decided to abandon the proposed pesticide treatment, citing the need for "[a]dditional environmental analysis and outreach for th[e] project." *Id.* Ex. 4.

Ordering APHIS to consistently disclose details about its pesticide treatments will allow Plaintiffs and the general public to provide important feedback to the agency about environmental resources that have been overlooked. In this way, Plaintiffs' requested injunctive relief will prevent or reduce the irreparable harm that Plaintiffs are likely to suffer over the next few years.

**B.      The Equities Weigh in Favor of Limited Injunctive Relief.**

Before granting an injunction, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co.*, 480 U.S. at 542. Here, Plaintiffs are not asking the Court to limit APHIS's activities in any way or conduct any new analyses; they are simply asking the Court to order APHIS to notify the public of its spraying activities in a timely fashion. Indeed, for the most part, Plaintiffs are just asking the Court to hold APHIS to its own prior commitments regarding notification and disclosure. *See, e.g.*, EIS009682 (discussing how APHIS will share with the public any "determination" that a proposed treatment will not significantly affect the environment). Complying with these notification and disclosure requirements would impose a de minimis burden on APHIS, a burden easily outweighed by the likely harm to Plaintiffs from APHIS's activities.

Consider first Plaintiffs' request for notification of upcoming treatments. Plaintiffs ask that the Court order APHIS to notify the general public, via its website, of upcoming pesticide treatments under the Program. *See* Proposed Remedies Order at 2–3. APHIS should already be doing this: it has in the past promised that, when it decides to conduct a pesticide treatment, it will determine whether the treatment will significantly affect the environment, document that determination, and share it with the public. *See* EIS009682, 009684. Indeed, APHIS has even promised to give the public an "opportunity to comment" on these treatment-specific determinations. EIS009682. In addition, APHIS already notifies "State-registered beekeepers[, ] organic producers," and area residents "in advance of proposed treatments." EIS000021–22, 000093; *see also* Missel Decl. Ex. 2 (example of a notice to local residents). Thus, it would impose little to no burden on APHIS to notify the general public of upcoming treatments.

PLAINTIFFS' OPENING BRIEF ON REMEDIES                                                                11

Similarly, requiring APHIS to release pre-treatment analyses in a timely fashion would impose little or no burden on the agency. Plaintiffs do not seek to force APHIS to do any new analyses or fill out any more paperwork; they are merely asking that APHIS be ordered to share its pre-treatment analyses with the general public before treatments occur, if at all reasonably possible. *See* Proposed Remedies Order at 3–4. These analyses include requests for treatment, Supplemental Selvaggio Decl. Ex. 5; evaluations of outbreaks, ECF No. 32-3 at 2; treatment recommendations, *id.* at 3; detailed work plans, ECF No. 32-4 at 1; site-specific descriptions of treatment areas from aerial spraying contract solicitations, *id.* at 2; land manager consistency reviews, ECF No. 32-3 at 4; and site-specific determination documents, EIS009682, 009684.[5]

From what Plaintiffs have been able to gather through Freedom of Information Act requests, different state offices of APHIS may use different treatment forms, and some offices may not conduct all of the analyses listed above. But, for each treatment, there should be documents reflecting the request for treatment, APHIS's evaluation of whether treatment is warranted, a workplan describing the treatment, and treatment maps. *See* EIS000020–21 (discussing APHIS's process for determining whether treatment is warranted after receiving a request for treatment); EIS009594–98 (discussing in detail APHIS's process for contracting for aerial pesticide treatments). It is difficult to see how requiring APHIS to share this information with the public in a timely fashion would burden the agency, especially given that some of these documents (detailed work plans, for instance) are already made available to potential contractors. *See* Missel Decl. ¶ 2 (stating that treatment maps and a portion of a detailed work plan for a treatment in Oregon in 2023 were obtained from sam.gov).

---

[5] Examples of many of these documents were filed as exhibits to a declaration in support of Plaintiffs' motion to complete the administrative records. *See* ECF No. 32 (declaration); ECF Nos. 32-3 through 32-6, 32-8, 32-10 through 32-12 (examples of relevant documents).

Finally, requiring APHIS to disclose all treatment records—including post-treatment monitoring records—after the conclusion of each spraying season would impose a minimal burden on APHIS. Again, Plaintiffs are not asking the Court to order APHIS to conduct any new analyses or create any new records. According to the 2019 EIS, APHIS already conducts "[p]ost-treatment surveys ... after a treatment has been applied" in order "to determine the effectiveness of the treatment," EIS000020, and also conducts post-treatment environmental monitoring, EIS009648–49. Sharing these materials with the public at the end of each spraying season would require a minimal effort from APHIS.

Ultimately, the notification and disclosure requirements discussed above would impose a minimal administrative burden on APHIS. Indeed, for the most part, Plaintiffs are just asking the Court to order APHIS to do what it has already promised, but failed, to do. *See, e.g.*, EIS009682, 009684 (promising to share pre-treatment analyses with the public). This minor administrative burden is outweighed by the likely irreparable harm to Plaintiffs discussed above. *See Amoco Prod. Co.*, 480 U.S. at 545 ("If [environmental] injury is sufficiently likely, ... the balance of harms will usually favor the issuance of an injunction to protect the environment.").

### C.    The Public Interest Favors Limited Injunctive Relief.

In addition to weighing the equities as between the parties, a court considering a request for injunctive relief must "take[] into consideration 'the public consequences in employing the extraordinary remedy of injunction.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022) (quoting *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 932 (9th Cir. 2003)). This "public interest" factor "'primarily addresses impact[s] on non-parties rather than parties.'" *Id.* (quoting *Bernhardt*, 339 F.3d at 931).

Here, Plaintiffs' requested relief would serve the public interest by ensuring that APHIS provides adequate information about its spraying activities to allow for meaningful public input concerning those activities. The general public clearly has an interest in the Program, as the events of 2023 in New Mexico show. *See supra*; *see also* Supplemental Selvaggio Decl. ¶¶ 7–12. And, as that example demonstrates, when the public is made aware of APHIS's spraying activities ahead of time, it can inform APHIS and other agencies about environmental resources in the spray area that APHIS has failed to analyze. *See id.* ¶¶ 9–10, 13–14. There is a "public interest in careful consideration of environmental impacts before major federal projects go forward," *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011), and Plaintiffs' requested relief would serve that interest.

In addition, letting the public know about aerial pesticide treatments ahead of time would ensure that members of the public can inform APHIS about recreational and other human uses of affected areas and can avoid those areas if APHIS does end up spraying. APHIS already (supposedly) notifies area *residents* of upcoming treatments, *see* Missel Decl. Ex. 2, but many of the areas that APHIS sprays are used by non-resident members of the public (including Plaintiffs' members) for recreational purposes. *See, e.g.*, Ostermann Decl. ¶¶ 4–9 (describing recreational pursuits in the Bighorn Basin in Wyoming). The general public—not just area residents—should know when and where APHIS is planning to spray, both so that members of the public can tell APHIS about potentially overlooked human uses of the areas set to be sprayed and so that they can avoid those areas during spraying if treatments do occur. *See id.* ¶ 16; *see also, e.g.*, Burd Decl. ¶ 26 ("If APHIS provided more detailed information ... about places that have been sprayed, and are likely to be sprayed in a given year, I and others could avoid or better time my visits to better protect myself and my family.").

**D.     The Requested Relief Is Narrowly Tailored to Address APHIS's NEPA Violations.**

Finally, Plaintiffs' requested relief is narrowly "tailored to remedy the particular violation[s]" identified by the Court. *Devlin*, 776 F.Supp. at 1450. The Court found that APHIS failed to include in the EIS "even a cursory discussion of the current baseline populations of" sensitive pollinators such as butterflies, moths, and native bees. SJ Order at 24. This omission made it harder for the public to provide meaningful input to APHIS during the NEPA process. *See id.* (stating that, without adequate baseline information, "the EIS cannot foster ... public participation"). APHIS then compounded this error by failing to conduct adequate site-specific analyses of environmental effects. SJ Order at 28–34.

Ordering APHIS to disclose information about its pesticide treatments in a timely fashion would allow the public to bring to APHIS's attention information about sensitive resources that may be affected by those treatments. *See* Supplemental Selvaggio Decl. ¶¶ 9–10, 13–15. This could cause APHIS and its partner agencies to rethink their spraying plans. In some cases, APHIS and/or the relevant land manager may decide not to spray at all, as happened in New Mexico in 2023. At the very least, though, APHIS will be able to take steps to avoid undue harm to sensitive environmental resources brought to its attention by Plaintiffs or by members of the general public, reducing or avoid harm to Plaintiffs. Moreover, APHIS will be able to use the information it receives in developing its new EIS.

This process—disclosure of a proposed agency activity, public feedback, agency consideration of that feedback, and revisions to the proposed activity—is precisely the "democratic decisionmaking structure" at the heart of NEPA. *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1099–1100 (9th Cir. 2010). APHIS has disrupted this process for its Program by failing to disclose adequate baseline and other information to the public. Plaintiffs'

requested relief would directly address APHIS's NEPA violations, and is thus narrowly "tailored to remedy the particular violation[s]" identified by the Court. *Devlin*, 776 F.Supp. at 1450.

## III.    The Court Should Vacate the Wyoming and Montana EAs.

Plaintiffs ask the Court to vacate the Wyoming and Montana EAs and FONSIs.[6] "[V]acatur is the presumptive remedy under the APA," and remand without vacatur is ordered "only in limited circumstances." *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022) (citations and internal quotation marks omitted).[7] Whether remand without vacatur (rather than vacatur) is warranted depends on the seriousness of the agency's errors and the disruptive consequences of vacatur. *Nat'l Family Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020). Because vacatur is the presumptive remedy under the APA, the parties opposing vacatur bear the burden of showing that remand without vacatur is warranted. *See Alliance for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018) (ordering vacatur and noting that the party opposing vacatur had not "overcome the presumption of *vacatur*"); *see also Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 466 F.Supp.3d 1217, 1226 (W.D. Wash. 2020) ("The burden is on the parties opposing invalidation of unlawful agency action to ... show[] that the equities demand remand without vacatur."), *aff'd*, 843 F. App'x 77 (9th Cir. Feb. 11, 2021) (unpublished).

---

[6] The Oregon and Idaho EAs that the Court found to violate NEPA are no longer in effect. *See* OR000009 (Oregon); ID000008 (Idaho). Declaratory relief is appropriate to remedy APHIS's NEPA violations with respect to the Oregon and Idaho EAs.

[7] The APA uses the phrase "set aside" rather than "vacate." But these terms mean the same thing in this context: to annul or render void an agency decision. *See Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 144 S.Ct. 2440, 2462–63 (2024) (Kavanaugh, J., concurring) (discussing the history of the APA and the meaning of "set aside").

There is no reason for the Court to deviate from the presumptive remedy of vacatur for the Wyoming and Montana EAs. Crucially, vacatur of the Wyoming and Montana EAs would not be disruptive *at all*, because APHIS can draft new, legally compliant EAs ahead of the 2025 spraying season. In the past, APHIS prepared new EAs for Montana and Wyoming every year, which demonstrates that the agency is capable of producing new EAs between now and the time of the 2025 spraying season. *See* MT009659 (2020 EA for central Montana); MT009832 (2021 EA for central Montana); MT000003 (2022 EA for central Montana); MT010834 (2023 EA for central Montana); WY010422 (2020 Wyoming EA); WY010584 (2021 Wyoming EA); WY000003 (2022 Wyoming EA). There are simply no "'economically disastrous' or otherwise ... significant" consequences here "to warrant deviation from the typical or standard remedy" of vacatur. *W. Watersheds Project v. Bernhardt*, 428 F.Supp.3d 327, 353 (D. Or. 2019) (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012)).

APHIS's errors are also not the kind of minor "technical violations" that often warrant remand without vacatur. *Id.* at 352. The Court found that APHIS violated NEPA in three distinct ways in preparing the state-level EAs: APHIS failed to adequately consider site-specific impacts, SJ Order at 28–30; failed to include adequate baseline information about sensitive species as well as past pesticide treatments and their effects, *id.* at 30–33; and failed to consider the cumulative impacts of the Program combined with other pesticide applications, *id.* at 33–34. The cumulative-impacts errors, standing alone, weigh heavily against remand without vacatur. *See League of Wilderness Defs./Blue Mtns. Biodiversity Project v. Peña*, No. 3:12-cv-02271-HZ, 2015 WL 1567444, at *4 (D. Or. April 6, 2015) (discussing the importance of a proper cumulative impacts analysis). Considered together, APHIS's errors clearly undermined the agency's ability to take a "hard look" at the effects of its Program at the site-specific level, and

also impeded the public's ability to provide meaningful input to APHIS. *See* SJ Order at 32 (explaining that the EAs' lack of information about past pesticide treatments frustrated NEPA's "twin aims" of careful analysis of environmental impacts and public disclosure). In other words, the EAs are so defective that it is impossible to tell whether APHIS would make the same substantive treatment decisions if it were to comply with NEPA. That uncertainty supports vacatur. *See Peña*, 2015 WL 1567444, at *5 (concluding that procedural errors weighed in favor of vacatur where the Court was "unable to determine whether the 'agency chose correctly'") (quoting *Allied-Signal, Inc. v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993)).

"Only in limited circumstances has the Ninth Circuit declined to vacate agency decisions that did not comply with NEPA." *Id.* at *6. The EAs do not present one of the "limited circumstances" in which remand without vacatur is appropriate. The Court should vacate the Montana and Wyoming EAs and associated FONSIs.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs their requested relief.

Respectfully submitted on this 15th day of November, 2024.

*/s/ Andrew R. Missel*
Andrew R. Missel (OSB # 181793)
Elizabeth H. Potter (OSB # 105482)
Hannah A. Goldblatt (OSB # 205324)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave., Ste. B
Portland, OR 97202
Phone: (503) 914-6388
amissel@advocateswest.org
epotter@advocateswest.org
hgoldblatt@advocateswest.org

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

This brief contains 5,589 words. Thus, it complies with the Court's order of October 4, 2024. ECF No. 88.