IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| XERCES SOCIETY FOR INVERTEBRATE CONSERVATION, *et al.* | Case No. 3:22-cv-00790-HZ |
| Plaintiffs, | SECOND DECLARATION OF WILLIAM D. WESELA |
| v. | |
| KEVIN SHEA, *et al.*, | |
| Federal Defendants, and | |
| STATE OF WYOMING and STATE OF MONTANA, | |
| Intervenor-Defendants | |

I, WILLIAM D. WESELA, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am employed by the United States Department of Agriculture (USDA), Animal and Plant Health Inspection Service (APHIS), Plant Protection & Quarantine (PPQ), as the National Policy Manager for the Rangeland Grasshopper and Mormon Cricket Suppression Program (Program). I have served as the National Policy Manager since 2015.

2. In my position as the National Policy Manager, I coordinate for the Program national policy decisions, national public information on the Agency website, and media and congressional information requests.

3. I am familiar with all the filings in this litigation including Plaintiffs' Opening Brief on Remedies, ECF No. 89.

4. Plaintiffs have asked for the following interim injunctive relief: (1) advance notification of planned pesticide treatments under the Program; (2) timely disclosure of pre-treatment analyses; and (3) disclosure of treatment records and post-treatment monitoring data. ECF No. 89 at 7-8.

5. Plaintiffs' requested measures are not only burdensome for APHIS, but show a lack of understanding for how site-specific treatments are considered and approved by APHIS upon the request of a land manager.

6. Plaintiffs' first request is for APHIS to provide "advance notification of treatments." Plaintiffs ask the Court to "require APHIS to notify the public in advance of planned pesticide treatments under the Program." ECF No. 89 at 7. Requiring APHIS to provide such notification would be difficult for multiple reasons.

   a. Some state and/or federal agencies provide APHIS with a blanket request for treatments for the season. Blanket requests contain few, if any, details. They may omit information such as location and may be multi-year.

   b. For each treatment request, APHIS evaluates whether the requested treatment is warranted. When APHIS conducts an evaluation, it reviews, among other things, grasshopper and Mormon cricket population densities, whether the land is rangeland, and individual state requirements. However, the evaluation is not uniform across Idaho, Montana, Oregon, and Wyoming.

   c. APHIS often must issue a request for quote, contract solicitation, or similar document seeking to engage a contractor to perform a pesticide treatment. APHIS is reevaluating its contracting process and at this time, cannot state what the revised contracting process will be. APHIS also cannot say if the revised

*Second Wesela Decl.* 2

        contracting process would contain all the items mentioned in Plaintiffs' request for advance notification of treatments.

    d. Any maps that may be prepared in anticipation of treatments are state-specific and are not uniform across Idaho, Montana, Oregon, and Wyoming. Moreover, maps may not be prepared for every treatment in each of those four states because they may be unnecessary or superfluous to information already available. Additionally, maps may only be prepared right before treatment is planned to occur because the grasshoppers and Mormon crickets may move and treatment requests may change at the last minute. Requiring APHIS to prepare such maps when they are neither routinely prepared nor uniform is essentially asking APHIS to prepare new types of documents and would be burdensome. Additionally, preparing maps that protect personally identifiable information is more difficult for some states like Montana where swaths of private land are intermixed with public lands.

    e. Even if APHIS determines that treatment is warranted, treatments do not always occur. Reasons for not proceeding with treatment include a lack of funding or changed circumstances, such as grasshoppers moving to areas different than the requested treatment area, the life stage of grasshoppers, a withdrawn request, poor weather conditions, high wind speeds, or inability to find a contractor to perform treatments.

    f. In some instances, approved treatments may be canceled 24-48 hours before they were scheduled to take place for the reasons stated above.

7. Plaintiffs ask the Court to "order APHIS to notify the general public, via its website, of upcoming treatments under the Program." ECF No. 89 at 11. As described in

        Paragraph 6, planning treatments is a multi-step process and during this process, APHIS receives and prepares documentation. Having to collect and review documentation for possible posting to its Program website at the same time would impede Program activities.

8. Plaintiffs claim that because APHIS notifies beekeepers, organic producers, and residents, "it would impose little or no burden on APHIS to notify the general public of upcoming treatments." ECF No. 89 at 11. Paragraphs 6-7 already discussed the difficulties in providing advance notification of treatments.

    a. With respect to beekeepers, APHIS attempts to notify beekeepers within 1 mile of treatment areas at least 48 hours before a pesticide is applied or establishes a treatment buffer around beehives. EIS000053, 123. To identify beekeepers, APHIS uses such methods as apiary information in state registries, survey information, and asking the requesting cooperator. Notification may occur via mailed letter, phone, email, or in person depending on the circumstances.

    b. With respect to organic producers, APHIS uses best efforts to notify them in advance of proposed treatments. EIS000021. For example, APHIS may ask the requesting cooperator if they are aware of organic properties adjacent to their requested treatment area and may establish buffers as appropriate.

    c. With respect to notification of residents, APHIS individually notifies residents within treatment areas, or their designated representatives, prior to proposed treatments. Such notification may occur through direct communication or other means. When there is evidence that pesticide treatments may take place, public meetings may be organized. Meetings are typically advertised to the public and

cooperators through local newspapers and/or other local media. EIS00022. If treatments occur on tribal lands, residents are typically notified through such methods as posters, local media, and direct communication.

9. Plaintiffs' second request is for "timely disclosure of pre-treatment analyses." Plaintiffs ask the Court to "require APHIS to disclose to the public in a timely fashion the analyses underlying each decision to conduct a pesticide treatment under the Program." ECF No. 89 at 7. Plaintiffs claim the pre-treatment analyses include "requests for treatment, evaluations of outbreaks, treatment recommendations, detailed work plans, site-specific descriptions of treatment areas from aerial spraying contract solicitations, land manager consistency reviews, and site-specific determination documents." ECF No. 89 at 12. Requiring APHIS to provide disclosure of such information would be difficult for multiple reasons.

   a. Difficulties in disclosing requests for treatment, evaluations of outbreaks, and treatment recommendations are the same as those articulated in Paragraphs 6 and 7 above.

   b. With respect to "land manager consistency reviews," APHIS believes that Plaintiffs are referring to an Idaho-specific document. The document is not used in Montana, Oregon, or Wyoming. The document was created to meet certain needs in Idaho that are inapplicable to the other three states.

   c. With respect to site-specific determination documents, and Plaintiffs' allegation that APHIS promised "to give the public an opportunity to comment on these treatment-specific determinations" (ECF No. 89 at 11), APHIS believes that Plaintiffs are referring to Appendix E entitled "Guidance for Grasshopper and

      Mormon Cricket Management Program" (February 2004) (EIS009678-87) of a provisional Grasshopper Guidebook (January 2008) (EIS009582-701) and/or FONSIs that APHIS previously published with draft EAs when seeking public comment. The guidebook discusses a process that is no longer followed. Additionally, the guidebook is no longer in use by APHIS and was removed from its website. The guidebook was cited once in the programmatic environmental impact statement (EIS) and the reference was to general information of when grasshopper suppression is warranted (EIS000014), not "treatment-specific determinations." APHIS no longer publishes FONSIs with its draft EAs when seeking public comment.

10.   Plaintiffs' third request is for "disclosure of treatment records and post-treatment monitoring data." Plaintiffs ask the Court to "order APHIS to disclose full treatment records, including any post-treatment monitoring data, at the end of each spraying season." ECF No. 89 at 8.

11.   APHIS already posts treatment records on its Program website at the request of Congress. Per Congressional direction in the Fiscal Year 2024 annual appropriations conference report for Agriculture, APHIS posted the requested post-treatment data from 2019-2023 on its Program website. The treatment data is available at https://www.aphis.usda.gov/sites/default/files/aphis-ghmc-treatment-data-2019-2023.pdf. As directed by Congress, APHIS will continue to post future data to its Program website unless directed otherwise by Congress.

12.   Should the Court determine that some interim injunctive relief is warranted, APHIS proposes the following narrowly tailored measures that should automatically expire

upon the issuance of the Record of Decision for a supplemental programmatic EIS or a new programmatic EIS.

a.  APHIS will only post the documents specified below to its Program website if they relate to treatments on both (1) public land (state and federal) and (2) in Idaho, Oregon, Wyoming, or the areas identified in Montana EA Number MT-1-2023-28 (MT010832, eastern Montana), and Montana EA Number MT-2-2023-28 (MT010979, central/northern Montana). These limitations are necessary to better protect personally identifiable information and comply with 7 U.S.C. § 8791, and because the documents relate to the actions of the states challenged in this action.

b.  APHIS will post on its Program website as soon as practical its Project Planning and Reporting Worksheet Part A (Detailed Workplan) and Part B (Aerial Contract, Site Specific Description) for public lands (federal and state). Samples are attached to this Declaration as Exhibits A and B. APHIS believes that the information in Part A and Part B of the Project Planning and Reporting Worksheet satisfy Plaintiffs' requests for advance notification of treatments and timely disclosure of pre-treatment analyses.

c.  APHIS will post to its Program website as soon as practical maps that are part of contract solicitation documents and are posted on SAM.gov for proposed aerial treatments for public lands (federal and state). These maps are already publicly available on SAM.gov and APHIS would post them to its Program website after they have been uploaded to SAM.gov. APHIS believes that the maps satisfy Plaintiffs' request for timely disclosure of pre-treatment analyses.

d.  APHIS will post to its Program website by December 31st of the calendar year

        Project Planning and Reporting Worksheet Part C (Post Treatment Report) attached to this Declaration as Exhibit C, except the section on costs and the section on post treatment density (kill rate). The section on costs is typically no longer completed in Part C. Additionally, the post-treatment density (kill rate) section is also not always completed due to circumstances that may prevent its completion such as availability of personnel and on the ground conditions. APHIS believes that Part C satisfies Plaintiffs' request for disclosure of treatment records.

13. Should the Court determine that the interim injunctive relief described above is warranted, APHIS notes the following:

    a. APHIS is in the process of updating the Project Planning and Reporting Worksheet. Exhibits A through C referenced above already reflect some changes that APHIS has made to the worksheet pending management approval. Additional changes may be made, but APHIS anticipates that Exhibits A through C are representative of most of the information that will remain on the worksheet after management approval. APHIS anticipates that the revised worksheet will be available for use during the 2025 treatment season.

    b. APHIS may redact portions of the documents posted on its website as necessary to remove personally identifiable information and to comply with federal law, including the Food, Conservation, and Energy Act of 2008 (7 U.S.C. § 8791).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and information.

Dated: December 20, 2024, in Laurel, Maryland.

WILLIAM WESELA
Digitally signed by WILLIAM WESELA
Date: 2024.12.20 11:13:48 -05'00'

WILLIAM D. WESELA
National Policy Manager
Grasshopper and Mormon Cricket Suppression Program
USDA, APHIS, PPQ