Andrew R. Missel (OSB # 181793)
Elizabeth H. Potter (OSB # 105482)
Hannah A. Goldblatt (OSB # 205324)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave., Ste. B
Portland, OR 97202
(503) 914-6388
amissel@advocateswest.org
epotter@advocateswest.org
hgoldblatt@advocateswest.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| XERCES SOCIETY FOR INVERTEBRATE CONSERVATION and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL WATSON, in his official capacity as Administrator of the Animal and Plant Health Inspection Service; and ANIMAL AND PLANT HEALTH INSPECTION SERVICE,<br><br>Federal Defendants,<br><br>and<br><br>STATE OF WYOMING and STATE OF MONTANA,<br><br>Intervenor-Defendants. | Case No.: 3:22-cv-00790-HZ<br><br>**PLAINTIFFS' REPLY BRIEF ON REMEDIES** |

PLAINTIFFS' REPLY BRIEF ON REMEDIES

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Court Should Remand the 2019 EIS to APHIS with Specific Instructions and a Deadline. ............................................................................................................................ 2

        A.  Plaintiffs' Requested Instructions on Remand Are Appropriate. ........................... 2

        B.  Plaintiffs' Requested Two-Year Deadline Is Appropriate. ..................................... 3

    II.   Limited Injunctive Relief Is Necessary and Appropriate. ............................................... 6

        A.  Plaintiffs' Requested Relief Will Prevent Irreparable Harm. ................................. 6

        B.  The Public Interest and Equities Favor Limited Injunctive Relief. ....................... 7

        C.  The Requested Relief is Narrowly Tailored to Address APHIS's NEPA Violations. ............................................................................................................... 9

    III.  The Court Should Vacate the State-Level FONSIs and EAs. ...................................... 10

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

## Cases

*Alliance for the Wild Rockies v. Zinke*,
    265 F.Supp.3d 1161, 1181 (D. Mont. 2017) ........................................................................ 3

*Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*,
    466 F.Supp.3d 1217 (W.D. Wash. 2020) .......................................................................... 11

*Coleman v. Tollefson*,
    575 U.S. 532 (2015) ........................................................................................................... 5

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
    36 F.4th 850 (9th Cir. 2022) ............................................................................................. 10

*Mont. Env't Info. Ctr. v. Haaland*, CV 19-130-BLG-SPW,
    2024 WL 1406535 (D. Mont. Apr. 2, 2024) ...................................................................... 5

*Nat. Res. Def. Council v. EPA*,
    38 F.4th 34 (9th Cir. 2022) ................................................................................................ 4

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................................... 5

*Or. Nat. Res. Council v. Devlin*,
    776 F.Supp. 1440 (D. Or. 1991) ........................................................................................ 9

*Westlands Water Dist. v. U.S. Dep't of the Interior*,
    376 F.3d 853 (9th Cir. 2004) ............................................................................................. 2

## Statutes

7 U.S.C. § 8791 .............................................................................................................................. 10

42 U.S.C. § 4336a ...................................................................................................................... 4, 5

## Court Rules

Fed. R. Civ. P. 58 ............................................................................................................................ 5

Fed. R. Civ. P. 60 ............................................................................................................................ 5

Fed. R. Civ. P. 65 ............................................................................................................................ 7

## Other Authorities

Br. Fed. Resp'ts Supp. Pet'rs, *Seven Cnty. Infrastructure Coalition v. Eagle Cnty.*,
    No. 23-975 (filed Aug. 2024) ...................................................................................... 3, 4

Christopher J. Walker, *The Ordinary Remand Rule & the Judicial Toolbox for Agency Dialogue*,
    82 Geo. Wash. L. Rev. 1553 (2014) ............................................................................... 3

## INTRODUCTION

In its summary-judgment order, the Court found that APHIS's 2019 programmatic environmental impact statement ("EIS") contained an "unreasonably narrow" purpose and need statement and that APHIS had "shirk[ed] incorporating any IPM [integrated pest management] techniques" in its alternatives analysis. SJ Order (ECF No. 83) at 19, 21. These errors go to the heart of the 2019 EIS. Despite this, Plaintiffs are not asking the Court to vacate the EIS, because doing so would do more harm than good to the environment. Instead, Plaintiffs ask the Court to give APHIS appropriate instructions and a deadline on remand to ensure the agency fixes the errors with the EIS. APHIS objects to this reasonable request, insisting that any kind of instruction or deadline on remand infringes on its authority. These arguments are wrong, and the Court should reject them.

APHIS, along with Intervenors, also objects to the modest interim injunctive relief requested by Plaintiffs. But their arguments are based on misunderstandings of Plaintiffs' requested relief and dubious claims about the burden that relief would impose on APHIS. Plaintiffs are merely asking for information to be posted to a website in a timely fashion. APHIS's strenuous objection to providing said information proves only that, even after losing on the merits, the agency is still allergic to the transparency demanded by the National Environmental Policy Act ("NEPA").

As for the state-level environmental assessments ("EAs") that the Court found to be inadequate, APHIS and Intervenors have not met their burden to show that those EAs should be left in place rather than vacated, and APHIS does not even oppose vacatur of the associated findings of no significant impact ("FONSIs").

# ARGUMENT

I. **The Court Should Remand the 2019 EIS to APHIS with Specific Instructions and a Deadline.**

   A. **Plaintiffs' Requested Instructions on Remand Are Appropriate.**

Plaintiffs seek two types of instructions from the Court to ensure APHIS complies with the Court's summary-judgment ruling on remand: (1) an instruction to prepare a new EIS rather than a supplemental EIS and (2) instructions regarding APHIS's cooperation with other agencies. *See* Pls.' Remedies Br. at 2–5. Contrary to APHIS's and Intervenors' arguments, these instructions are appropriate.

First, as to the instruction to prepare a new EIS, APHIS does not even attempt to explain how a supplemental EIS could address the errors identified by the Court. *See* APHIS Resp. Br. at 2–3. Instead, APHIS cites to regulations permitting a supplemental EIS under certain circumstances and offers generic arguments about agency discretion. But the 2019 EIS's unduly narrow purpose and need statement and the resultant unlawful range of alternatives go to the heart of that EIS, and APHIS can address those errors only by preparing an entirely new EIS. *See* Pls.' Remedies Br. at 3. A supplemental EIS is typically prepared to update an EIS in response to new information, and is ill-suited to the task of fundamentally rethinking APHIS's approach to its grasshopper control program ("Program"). *See Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 873 (9th Cir. 2004) (discussing the circumstances that call for a supplemental EIS).

Second, as to the instructions regarding cooperation with other agencies, APHIS and Intervenors misunderstand the requested instructions. Plaintiffs are *not* asking the Court to order APHIS to employ any particular cooperating-agency mechanism on remand; they are merely asking the Court to instruct APHIS that such mechanisms are available under NEPA and *may* be

necessary to facilitate adequate consideration of IPM techniques in line with the Court's summary-judgment order. *See* Pls.' Remedies Br. at 4–5. Because the instructions do not tell APHIS whether or how to use the cooperating-agency mechanisms on remand, they do not impermissibly intrude on APHIS's decisionmaking authority. *See* Christopher J. Walker, *The Ordinary Remand Rule & the Judicial Toolbox for Agency Dialogue*, 82 Geo. Wash. L. Rev. 1553, 1596 (2014) ("[T]he court respected the agency's proper role. It did not order the agency to decide any issue a particular way. At most, the court merely communicated with a shout, rather than a whisper.").

APHIS's argument that the requested cooperating-agency instructions are "unnecessary" because APHIS will act in good faith on remand proves too much. APHIS Resp. Br. at 4. By APHIS's logic, courts should never provide instructions on remand (beyond "the decision is remanded"), and yet courts regularly do so. *See Alliance for the Wild Rockies v. Zinke*, 265 F.Supp.3d 1161, 1181 ("upon remand, a court should provide the agency with specific instructions to address its errors"); *see generally* Walker, *The Ordinary Remand Rule*, *supra*, at 1594–98. Such instructions "[h]elp[] agencies to act within their congressionally delegated discretion on remand." Walker, *The Ordinary Remand Rule*, *supra*, at 1618–19.

Finally, APHIS's argument that a pending Supreme Court case counsels against Plaintiffs' requested instructions is misguided. APHIS Resp. Br. at 5. It is not a lower court's job to predict ahead of time how the Supreme Court will resolve a pending case. And, even putting that aside, the issues before the Supreme Court in the cited case do not involve an agency's duty to cooperate with other agencies when considering alternatives under NEPA. *See* Br. Fed. Resp'ts Supp. Pet'rs, *Seven Cnty. Infrastructure Coalition v. Eagle Cnty.*, No. 23-975 (filed Aug.

2024).[1] In fact, the federal government's opening brief in that case emphasizes the importance of agency cooperation in the NEPA process. *See id.* at 32. Thus, it is very unlikely that anything in Plaintiffs' requested instructions would be called into question by the Supreme Court's future opinion in *Seven County Infrastructure Coalition*.

### B. Plaintiffs' Requested Two-Year Deadline Is Appropriate.

APHIS argues that the Court should not give APHIS a deadline for a new EIS because "Congress [has] expressly created its own deadline." APHIS Resp. Br. at 6–8. But, as the Ninth Circuit recently concluded, it is appropriate for a court to "impos[e] a deadline that is the same as Congress's deadline." *Nat. Res. Def. Council v. EPA*, 38 F.4th 34, 61 n.20 (9th Cir. 2022). That is what Plaintiffs ask the Court to do: impose a two-year deadline that is the same as Congress's deadline. *See* 42 U.S.C. § 4336a(g)(1)(A).

As explained in Plaintiffs' opening brief on remedies, a deadline is necessary given that remand will be without vacatur and given APHIS's past delays in completing Endangered Species Act ("ESA") consultation. Pls.' Remedies Br. at 6–7. APHIS's attempt to shift the blame for these delays falls flat. APHIS added a new pesticide (diflubenzuron) to the Program in 2002, then waited *13 years* to prepare a new programmatic biological assessment analyzing the effects of that pesticide. *Compare* EIS009322 *with* EIS005591. Even if the additional nine-year delay in completing ESA consultation was entirely the fault of the U.S. Fish and Wildlife Service, APHIS was solely responsible for the egregious delay in preparing the new biological assessment.

APHIS suggests that imposing a deadline would "inject [the Court] into the day-to-day management" of APHIS, because APHIS would have to seek relief from the Court if it needed

---

[1] The cited brief can be found here: https://www.supremecourt.gov/DocketPDF/23-975/323639/20240828215222594_23-975tsUnitedStates.pdf

PLAINTIFFS' REPLY BRIEF ON REMEDIES                                                                                     4

more time to complete its NEPA analysis. APHIS Resp. Br. at 7. This makes little sense. Plaintiffs are not asking the Court to retain jurisdiction or otherwise oversee APHIS's activities on remand. On the contrary, Plaintiffs expect that, once the Court issues its remedies order, final judgment will follow "promptly" thereafter, Fed. R. Civ. P. 58(b)(2), because the remedies order will resolve all pending issues in the case.[2] If APHIS needs more than two years to complete a new EIS, it can ask the Court for more time, and the Court may grant APHIS "so much additional time as is necessary." 42 U.S.C. § 4336a(g)(2). Otherwise, this Court will not be involved at all in APHIS's activities on remand.[3]

Finally, APHIS's suggestion that any deadline should start from the date of a "final, non-appealable judgment" is a non-starter. APHIS Resp. Br. at 8 n.5. "Unless a court issues a stay, a trial court's judgment ... normally takes effect despite a pending appeal." *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015). In order to delay such an effect, a party may seek a stay pending appeal, but such relief is not granted as of right—"[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). If APHIS wants to delay the effect of the Court's remedies order and judgment, it may seek a stay. Otherwise, the Court's judgment should go into effect immediately, as judgments ordinarily do.

---

[2] There is thus no "confusion" as to when the proposed two-year clock would start. *See* APHIS Resp. Br. at 8.

[3] APHIS misses the point of *Montana Environmental Information Center v. Haaland*, CV 19-130-BLG-SPW, 2024 WL 1406535 (D. Mont. Apr. 2, 2024). Plaintiffs cited that case to explain that Federal Rule of Civil Procedure 60(b)(5) would allow APHIS to move the Court for a new deadline even after final judgment has been entered. Pls.' Remedies Br. at 7 n.3. There is nothing to suggest that this mechanism is unavailable just because NEPA now provides a deadline.

## II.     Limited Injunctive Relief Is Necessary and Appropriate.

Plaintiffs ask this Court to enter narrowly tailored interim injunctive relief in the form of notification and disclosure requirements for APHIS's Program pesticide treatments. *See* Pls.' Remedies Br. at 7–8. Although APHIS and Intervenors oppose this relief, they do not dispute that Plaintiffs will suffer irreparable harm absent relief. Instead, they make various arguments to the effect that the requested relief is unduly burdensome and would not actually prevent harm. APHIS Resp. Br. at 10–19; Intervenors' Resp. Br. at 5–7. These arguments are flawed.

### A.  Plaintiffs' Requested Relief Will Prevent Irreparable Harm.

APHIS does not actually dispute that Plaintiffs are likely to suffer irreparable harm from the Program. Instead, APHIS seems to argue that any harm will not be caused by the 2019 EIS because "site-specific activities (such as spraying) can only proceed under the authorization of a state-level NEPA decision." APHIS Resp. Br. at 12. This ignores that each state-level EA tiers to the 2019 EIS, EIS000021, and that it is thus the EIS *together with* the state-level EAs that authorize spraying. In this way, the invalid EIS will authorize all treatments during the remand period, thereby harming Plaintiffs.

APHIS also argues that the events in 2023 in New Mexico "underscore[] the fact that additional information from APHIS would not alleviate [Plaintiffs'] alleged injuries" because in that instance it was the Bureau of Land Management ("BLM"), not APHIS, that ultimately withdrew the treatment. APHIS Resp. Br. at 12–13. This misses the point. BLM withdrew its treatment request in light of concerns raised by the public. Pls.' Remedies Br. at 10; Supplemental Selvaggio Decl. ¶¶ 7–10. The public was able to raise those concerns only because it knew about APHIS's planned spray ahead of time. This shows that timely disclosure of information about APHIS's planned treatments allows Plaintiffs (and the public) to understand

potential impacts to resources and properly engage in and influence the decisionmaking process. The fact that it might be a land management agency like BLM, rather than APHIS itself, that eventually alters or withdraws a planned treatment in response to public input makes no difference.

Finally, APHIS argues that the requested injunctive relief is unnecessary because of APHIS's annual disclosures of spray data in response to a recent explanatory statement accompanying an appropriations bill.[4] APHIS Resp. Br. at 13. But this information is inadequate to remedy the likely irreparable harm to Plaintiffs. First and foremost, this information is released *after* spraying has occurred, and so cannot possibly inform Plaintiffs and the public about upcoming spray activities. Moreover, aggregate county-level information does not necessarily inform the public of site-specific resources in treatment locations.

### B. The Public Interest and Equities Favor Limited Injunctive Relief.

APHIS next argues that Plaintiffs have not met their burden to show the public interest and balance of equities favor interim injunctive relief. APHIS's arguments are overblown and misleading.

First, Plaintiffs' requested relief would not involve the Court in day-to-day agency management *at all*. Plaintiffs are not asking the Court to retain jurisdiction, nor are they asking APHIS to file status reports or otherwise inform the Court of its activities on remand. Plaintiffs seek an order that "describe[s] in reasonable detail ... the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). As long as APHIS complies with that order, there will be no need for judicial oversight during the remand period.

---

[4] Congress's instruction to APHIS is found in an explanatory statement, *see* APHIS Resp. Br. Ex. 1, not a statute. APHIS's suggestions to the contrary are incorrect.

PLAINTIFFS' REPLY BRIEF ON REMEDIES                                                                                                  7

Second, APHIS's arguments concerning the burden of Plaintiffs' requested relief misunderstand the actual relief sought by Plaintiffs. Plaintiffs are not "asking APHIS to prepare new types of documents." Second Wesela Decl. ¶ 6d. They are only asking that APHIS provide timely notice of upcoming treatments and disclose certain documents and analyses that the agency *already prepares* in connection with treatments. Far from being a "vague request," APHIS Resp. Br. at 15, Plaintiffs' request is for certain *specific* types of documents. *See* Proposed Remedies Order at 3–5.[5]

The reasons given in APHIS's brief and the Second Wesela Declaration for why notification of upcoming treatments would be burdensome are particularly weak. *See* Second Wesela Decl. ¶¶ 6–8. For instance, the fact that a proposed treatment might not end up occurring has no bearing on whether notifying Plaintiffs and the public of that proposed treatment is burdensome. Similarly, just because APHIS might not know all the details of a proposed treatment does not make it burdensome for the agency to disclose to the public those details it *does* know. When more details are known, APHIS can then update the public. *See* Proposed Remedies Order at 2–3 (requiring APHIS to initially disclose information about upcoming treatments "to the extent it is available" and then update the public as more details are known). And APHIS's suggestion that notifying the general public of upcoming treatments is somehow *harder* than notifying individual beekeepers and residents is preposterous: updating a single webpage is *easier* than providing individualized notice.

---

[5] Contrary to APHIS's argument, Plaintiffs do not assume that APHIS's analyses in each state are the same. *See* Pls.' Remedies Br. at 12 (acknowledging that "different state offices of APHIS may use different treatment forms, and some offices may not conduct all of the analyses listed"). That is why the proposed remedies order provides *examples* of the *types* of documents APHIS should disclose. *See, e.g.*, Proposed Order on Remedies at 3–4.

### C. The Requested Relief is Narrowly Tailored to Address APHIS's NEPA Violations.

Both APHIS and Intervenors argue that the requested injunctive relief is not narrowly tailored. They first argue that Plaintiffs are conflating programmatic and site-specific issues and that relief should be limited to the four states at issue in Plaintiffs' challenges to the EAs. APHIS Resp. Br. at 16–17; Intervenors' Resp. Br. at 7. This overlooks that, until APHIS completes a new EIS, *all* treatments in *all* states will continue to be conducted under EAs that tier to the flawed 2019 EIS. EIS000021. As discussed in Plaintiffs' opening remedies brief, the requested notice and disclosure requirements are tailored to remedy the flaws in the 2019 EIS, including the inadequate discussion of baseline conditions. Pls.' Remedies Br. at 15–16. Thus, notice and disclosure requirements for the entire program are necessary "to remedy the particular violation[s]" in the programmatic EIS. *Or. Nat. Res. Council v. Devlin*, 776 F.Supp. 1440, 1450 (D. Or. 1991).

APHIS describes the relief sought by Plaintiffs as "sweeping," APHIS Resp. Br. at 18, but, as discussed above, Plaintiffs seek only documents APHIS is already in the practice of preparing; APHIS need not prepare any new analyses to comply with Plaintiffs' proposed injunction. As for notification of upcoming treatments, APHIS already notifies local residents and beekeepers, so it is difficult to see what is "sweeping" about also updating a webpage.

Finally, APHIS's proposed injunctive relief is inadequate to prevent harm to Plaintiffs. *See* APHIS Resp. Br. at 18–19. APHIS's proposal confines the interim measures to the states at issue in Plaintiffs' EA challenges, but, as explained above, the errors necessitating this relief are program-wide. Additionally, APHIS's proposal allows it to release information "as soon as practical." *Id.* at 19. This squishy language could allow APHIS to wait until the end of the

PLAINTIFFS' REPLY BRIEF ON REMEDIES                                                                  9

treatment season to give notice of treatments and post relevant documents, thereby defeating the very purpose of pre-treatment notice.[6]

### III. The Court Should Vacate the State-Level FONSIs and EAs.

APHIS agrees vacatur of the Wyoming and Montana FONSIs is appropriate, but argues that the EAs themselves should not be vacated because "the EAs are not final agency actions." APHIS Resp. at 9–10. But it is well-settled in this circuit that both FONSIs *and* EAs are final agency actions. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 868 (9th Cir. 2022). Thus, the Court should vacate the Wyoming and Montana EAs and FONSIs.

Intervenors oppose vacatur, but their arguments are undermined by APHIS's non-opposition and are, in any event, speculative and exaggerated. As to the disruptive consequences of vacatur, Intervenors' arguments all hinge on speculation that APHIS may not be able to complete new EAs before the 2025 treatment season. Intervenors' Resp. Br. at 12–13. Crucially, though, APHIS itself does not say this, and even Intervenors acknowledge that APHIS would likely be able to complete new EAs in time if the "Court issues a decision early in 2025." *Id.* at 12. Furthermore, Intervenors ignore that there is nothing stopping APHIS from starting to work on new EAs now, before the Court enters judgment. Intervenors also fail to mention that the Montana and Wyoming EAs extend beyond 2025, and make no argument that APHIS would be unable to prepare new EAs in time for the 2026 spraying season.[7]

As to the seriousness of the errors, Intervenors seem to contend that the EAs should not be vacated because the EIS is not being vacated, and the errors in the EAs "are less significant

---

[6] Plaintiffs do not object to Intervenors' proposal to explicitly allow APHIS to redact information as necessary to comply with federal laws and regulations other than 7 U.S.C. § 8791.

[7] The Wyoming EA runs through 2027, WY000007, while the Montana EAs run through 2028, MT010839.

PLAINTIFFS' REPLY BRIEF ON REMEDIES                                                                                                  10

than the deficiencies this Court found with the EIS." Intervenors' Resp. Br. at 8–9. Putting aside that it is nonsensical to compare the magnitude of the errors in a programmatic analysis to those in a site-specific analysis, this argument ignores that the only reason Plaintiffs do not seek vacatur of the 2019 EIS is that it would be a worse outcome for the environment. And, perhaps most importantly, Intervenors soft-pedal the errors in the EAs, which the Court found violated NEPA in several distinct ways. *See* SJ Order at 28–34.

"The burden is on the parties opposing invalidation of unlawful agency action to ... show[] that the equities demand remand without vacatur." *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 466 F.Supp.3d 1217, 1226 (W.D. Wash. 2020), *aff'd*, 843 F. App'x 77 (9th Cir. Feb. 11, 2021) (unpublished). APHIS has not tried to meet that burden, and Intervenors do not come close to meeting it. The Court should vacate the Wyoming and Montana EAs and FONSIs.

## CONCLUSION

For the reasons given above and in Plaintiffs' opening remedies brief, the Court should grant Plaintiffs their requested relief.

Respectfully submitted on this 10th day of January, 2025.

> */s/ Andrew R. Missel*
> Andrew R. Missel (OSB # 181793)
> Elizabeth H. Potter (OSB # 105482)
> Hannah A. Goldblatt (OSB # 205324)
> ADVOCATES FOR THE WEST
> 3701 SE Milwaukie Ave., Ste. B
> Portland, OR 97202
> Phone: (503) 914-6388
> amissel@advocateswest.org
> epotter@advocateswest.org
> hgoldblatt@advocateswest.org

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

This reply contains 3,249 words. Thus, it complies with the Court's order of October 4, 2024. ECF No. 88.

*/s/ Andrew R. Missel*
Andrew R. Missel (OSB # 181793)
