IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

XERCES SOCIETY FOR
INVERTEBRATE CONSERVATION
and CENTER FOR BIOLOGICAL
DIVERSITY,

        Plaintiffs,

   v.

MICHAEL WATSON, in his official
capacity as Administrator of the Animal and
Plant Health Inspection Service; and the
ANIMAL AND PLANT HEALTH
INSPECTION SERVICE,

        Federal Defendants,

and

STATE OF WYOMING and
STATE OF MONTANA,

        Intervenor-Defendants.

No. 3:22-cv-00790-HZ

OPINION & ORDER

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiffs Xerces Society for Invertebrate Conservation and Center for Biological Diversity brought this case against Defendants Michael Watson[1] and the Animal and Plant Health Inspection Service ("APHIS") alleging violations of the National Environmental Policy Act ("NEPA") and the Administrative Procedures Act ("APA"). Specifically, Plaintiffs challenged APHIS's 2019 Environmental Impact Statement ("EIS") and associated Record of Decision ("ROD") as well as its operative state-level Environmental Assessments ("EA") and findings of no significant impact ("FONSI") for Oregon, Idaho, Wyoming, and Montana related to APHIS's Rangeland Grasshopper and Mormon Cricket Suppression Program. On September 21, 2022, the Court granted a motion to intervene by the State of Wyoming and the State of Montana (the "Intervenor-Defendants").

On August 1, 2024, the Court granted in part and denied in part Plaintiffs' motion for summary judgment and denied APHIS's and Defendant-Intervenor's motions for summary judgment, finding that APHIS's 2019 EIS and 2020 Idaho EA, 2022 Oregon EA, 2022 Wyoming EA, and 2023 Montana EAs violated NEPA. The parties now dispute the appropriate remedies in this case.[2]

---

[1] APHIS substituted Michael Watson for Kevin Shea as APHIS Administrator. APHIS Br. 1, ECF 93 (citing Fed. R. Civ. P. 25(d)).

[2] In a supplemental filing, APHIS also argues that the Supreme Court's recent decision in *Seven County Infrastructure Coalition v. Eagle County, Colorado*, No. 23-975, 2025 WL 1520964 (U.S. May 29, 2025), "warrants reconsideration of the Court's evaluation of the reasonableness of the programmatic EIS" and state-level EAs. APHIS Notice Suppl. Auth. 1-2, ECF 98. However, APHIS has not moved for reconsideration of this Court's decision, and consistent with the principles described in *Seven County*, the Court applied a deferential standard of review in evaluating the 2019 EIS and EAs its Opinion & Order. *See* Op. & Order 6-7. Moreover, *Seven County* involved a lower court's finding that an agency failed to consider the effects of projects separate in time or place from the project under review, which was not an issue in this case. *Seven County*, 2025 WL 1520964 at *5. The Court, however, has considered *Seven County* in deciding the remedies issue before it.

## BACKGROUND

This case concerns APHIS's Rangeland Grasshopper and Mormon Cricket Suppression Program ("the Program"). The Plant Protection Act charges APHIS with carrying out a program to control grasshopper and Mormon cricket populations to protect rangeland. 7 U.S.C. § 7717(a). Under the statute, APHIS must immediately treat lands infested with grasshoppers or Mormon crickets when their populations rise to levels of economic infestation. *Id.* at (c)(1). APHIS must also "work in conjunction with other Federal, State, and private prevention, control, or suppression efforts to protect rangeland." *Id.* at (c)(2). The Program—which stems from this statutory authority—operates in seventeen western states, including Idaho, Wyoming, Oregon, and Montana. EIS11, ECF 46.[3]

In the present case, Plaintiffs brought a NEPA challenge to the Program's most recent update. In the 2019 EIS, APHIS laid out three alternatives: (1) a "no action" alternative, which would continue the grasshopper suppression program in the 2002 EIS; (2) a "no suppression" alternative, under which APHIS would abandon any efforts to suppress grasshopper infestations; and (3) an "adaptive management" alternative in which APHIS would opt for RAATs or conventional (non-reduced) treatments depending on the situation. EIS31. Under the third alternative, APHIS can also use chlorantraniliprole—a new pesticide—in addition to the three previously authorized under the 2002 EIS—malathion, diflubenzuron, and carbaryl. EIS24. In the 2019 EIS, APHIS selected alternative three. EIS3. Tiered to the 2019 programmatic EIS are site-specific EAs that address local issues. EIS11, 16, 26. Relevant to this case are APHIS's 2020 Idaho EA, 2022 Oregon EA, 2022 Wyoming EA, and two of the 2023 Montana EAs. In EAs for

---

[3] "EIS" refers to the record relevant to the 2019 EIS. Similarly, citations to "OR," "ID," "WY," and "MT" refer to the record for the respective state-specific EAs.

3 – OPINION & ORDER

Idaho, Oregon, and Wyoming, APHIS selected the same alternative as the EIS but with an additional limitation on the use of pesticides to malathion, carbaryl, and diflubenzuron, the three pesticides previously authorized under the 2002 EIS. ID14-15; OR16-18, 69; WY12-14. In the Montana EAs, APHIS selected alternative three without limitation on the type of pesticide used. MT10845-46, 10992-93.

At summary judgment, the Court granted in part and denied in part Plaintiffs' claims, ultimately concluding that both the programmatic 2019 EIS and the state-level EAs violated NEPA. First, the Court found that the 2019 EIS's purpose and need statement was not reasonable because it did not consider Integrated Pest Management ("IPM") techniques. Specifically, the Court concluded that the relevant statutes require APHIS to "carry[] out a program to control grasshoppers to protect rangelands and, in doing so, . . . use IPM techniques *and* treat lands infested with grasshoppers at a level of economic infestation when requested." Op. & Order 19 (citing 7 U.S.C. § 7717 and 7 U.S.C. § 136r-1), ECF 83. Because the range of alternatives considered by APHIS in the 2019 EIS does not include IPM techniques, the Court also concluded that APHIS erred in its alternatives analysis. *Id.* at 21.

Plaintiffs also argued that the 2019 EIS lacked adequate baseline information. The Court agreed with Plaintiffs that the EIS failed to include any discussion of the current baseline populations of sensitive environmental resources, such as butterflies, moths, and native bees. *Id.* at 24. It otherwise concluded that the 2019 EIS adequately addressed the sage grouse and appropriately deferred its discussion as to past pesticide applications and their potential impacts on the environment to the state-level EAs. *Id.* at 23-24.

In addition, Plaintiffs challenged the 2019 EIS's discussion of cumulative effects and mitigation. Again, the Court disagreed with Plaintiffs as to APHIS's analysis of mitigation. It

agreed, however, that its cumulative effects analysis was arbitrary because it failed to consider the cumulative impacts of its program as a whole in combination with other pesticide treatments. *Id.* at 26-27.

Plaintiffs made similar arguments with regard to the state-level EAs. First, the Court concluded that the state-level EAs did not adequately address the site-specific environmental effects of the pesticide program, including site-specific resources and likely treatment areas. *Id.* at 30. It also determined the EAs did not include adequate baseline information, including information on past pesticide treatments or the status of pollinators or other sensitive species. *Id.* at 31-32. And like the 2019 EIS, the Court concluded that the state-level EAs did not consider the cumulative effect that pesticides could have on the environment when used in temporal or geographic proximity.

Altogether, the primary deficiencies in these documents include: (1) a failure to consider IPM techniques; (2) a lack of baseline information regarding sensitive species and past pesticide use; (3) a failure to use past data to anticipate future pesticide use; (3) a failure to consider the effects of the Program on unique geographic or environmental areas; and (4) and failure to consider the cumulative effects of past and present use of pesticides on the environment when used in geographic or temporal proximity.

## DISCUSSION

The parties dispute the appropriate scope of remedies in this case. Plaintiffs seek: (1) remand of the 2019 EIS without vacatur but with specific instructions to APHIS; (2) vacatur of the relevant FONSIs and EAs for Montana and Wyoming[4]; and (3) injunctive relief. APHIS does

---

[4] Plaintiffs do not seek vacatur of the Oregon and Idaho EAs because they are no longer in effect. Pls.' Br. 16 n.6, ECF 89.

5 – OPINION & ORDER

not object to remand of the 2019 EIS or vacatur of the Montana and Wyoming FONSIs. It does, however, take issue with Plaintiffs' proposed instructions on remand pertaining to the 2019 EIS, vacatur of the Montana and Wyoming EAs, and Plaintiffs' proposed injunctive relief. Intervenor-Defendants similarly object to Plaintiffs' request for vacatur of the state-level EAs and Plaintiffs' request for injunctive relief. The Court addresses each of Plaintiffs' proposed remedies in turn.

I.      **Remand of the 2019 EIS**

While there is no dispute that the 2019 EIS should not be vacated, the parties do not agree as to Plaintiffs' proposed instructions on remand of the 2019 EIS. Specifically, Plaintiffs ask the Court to remand the EIS with: (1) instructions to issue a new—as opposed to supplemental—EIS; (2) a recommendation that APHIS work with cooperating agencies; and (3) a two-year deadline for completion of the EIS. APHIS and the Intervenor-Defendants oppose Plaintiffs' proposals. While the Court finds that the two-year deadline—which is consistent with the deadline set by Congress—is appropriate in this case, it declines to issue Plaintiffs' proposed instructions.

Turning first to Plaintiffs' request that the Court require APHIS to issue a new EIS rather than a supplemental EIS, the Court declines to issue such a specific instruction. In support of its argument, Plaintiffs cite *Center for Biological Diversity v. National Highway Traffic Safety Administration*, 538 F.3d 1172, 1225 (9th Cir. 2008). But that case discusses that standards for ordering an EIS after remanding an EA, not whether to require an agency to issue an EIS or supplemental EIS. *Id.* ("[I]f the court determines that the agency's proffered reasons for its FONSI are arbitrary and capricious and the evidence in a complete administrative record demonstrates that the project or regulation may have a significant impact, then it is appropriate to remand with instructions to prepare an EIS."). As the Supreme Court has warned: "At least in the

6 – OPINION & ORDER

absence of substantial justification for doing otherwise, a reviewing court may not, after determining that additional evidence is requisite for adequate review, proceed by dictating to the agency the methods, procedures, and time dimension of the needed inquiry[.]" *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 544-45 (1978). Thus, while the Court acknowledges Plaintiffs' argument that the Court determined a core component of the 2019 EIS—the purpose and need statement—was inadequate because it failed to comply with APHIS's statutory mandate, Op. & Order 19, the Court finds that deference to the agency is appropriate on this issue.

Second, as to Plaintiffs' proposed recommendation regarding cooperating agencies, the Court finds that this is outside the scope of its summary judgment decision. Plaintiffs ask the Court to instruct APHIS as follows:

> In addressing the failure to consider integrated pest management ("IPM") techniques, APHIS shall take all necessary steps to ensure that it is able to meaningfully consider such techniques in the new EIS. This may include, *inter alia*, designating "any Federal, State, Tribal or local agency that has jurisdiction by law or special expertise with respect to any environmental impact involved in [APHIS's] proposal to serve as a cooperating agency," 42 U.S.C. § 4336a(a)(3); "request[ing] the participation of each cooperating agency at the earliest practicable time," *id.* § 4336a(a)(2)(B); and "giv[ing] consideration to any analysis or proposal created by a cooperating agency" when preparing a new EIS, *id.* § 4336a(a)(2)(C).

*See* Pls.' Proposed Order 1-2, ECF 89-1. While the Court did find that APHIS needed to, pursuant to its statutory mandate, use IPM techniques, the Court did not consider whether and to what extent APHIS had to coordinate with other agencies in implementing these techniques. *See* Op. & Order 18-19. Indeed, the sole issue before the Court was whether APHIS had to use IPM techniques under the relevant statutes and, relatedly, failed to address these techniques in the 2019 EIS. The Court therefore finds that it is inappropriate to issue Plaintiffs' requested recommendation regarding interagency cooperation in its instructions on remand in this case.

7 – OPINION & ORDER

Finally, the Court finds Plaintiffs' proposed two-year deadline for completion of a new or supplemental EIS is appropriate. Defendants essentially argue that this deadline is no longer necessary because Congress has since set a two-year deadline for completion of an EIS under NEPA. *See* 42 U.S.C. § 4336a(g) . The Court, however, finds that it can incorporate the present NEPA requirements into the judgment, thereby offering clarity as to the timeline for completing its new analysis and providing Plaintiffs a remedy should there be a delay. *See Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 38 F.4th 34, n.20 (9th Cir. 2022) ("We avoid any potential issue with propelling the court into the domain which Congress has set aside exclusively for the administrative agency by imposing a deadline that is the same as Congress's deadline for review of pesticide registrations.") (internal quotations and citation omitted); *Clean Wisconsin v. Env't Prot. Agency*, 964 F.3d 1145, 1176 (D.C. Cir. 2020) (finding it appropriate to impose a court-ordered deadline that was consistent with Congress's time dimension for agency action). This is particularly appropriate where, as here, the legally inadequate EIS will remain in place indefinitely without action by APHIS.

Thus, the Court will require APHIS to complete its new or supplemental EIS within two years from final judgment in this case, consistent with 42 U.S.C. § 4336a(g)(1)(A)(i) ("[A] lead agency shall complete, as applicable, the environmental impact statement not later than the date that is 2 years after the sooner of, as applicable, the date on which such agency determines that section 4332(2)(C) of this title requires the issuance of an environmental impact statement with respect to such action."). Should the agency require additional time, it may request from the Court a new deadline "that provides only so much additional time as is necessary to complete such EIS . . . ." *Id.* at (g)(2).

///

8 – OPINION & ORDER

## II. Vacatur of the Montana and Wyoming EAs

The parties also dispute whether the Court should vacate the Montana and Wyoming EAs.[5] Specifically, Intervenor-Defendants oppose vacatur, arguing that it would cause significant harm during the 2025 spraying season.

The APA provides that the "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). When a court determines that an agency's decision was unlawful under the APA, vacatur is the standard remedy. *See Alaska Conservation Council v. U.S. Army Corps of Eng'rs,* 486 F.3d 638, 654 (9th Cir.2007) ("Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action. 5 U.S.C. § 706(2). In other words, a court should 'vacate the agency's action and remand to the agency to act in compliance with its statutory obligations.'" (citation omitted)), *rev'd and remanded sub nom. Coeur Alaska, Inc. v. Se. Alaska Conservation Council,* 557 U.S. 261 (2009); *Alsea Valley All. v. U.S. Dep't of Com.,* 358 F.3d 1181, 1185 (9th Cir.2004) ("Although not without exception, vacatur of an unlawful agency rule normally accompanies a remand.")

---

[5] In its response brief, APHIS does not oppose vacatur of the FONSIs. But it argues that vacatur of the EAs is not appropriate because the FONSI—not the EA—is the final agency action. APHIS Br. 9. APHIS cites no legal authority that directly states this proposition, and the Court notes that many cases vacate both the FONSI and the EA. *See, e.g., WildEarth Guardians v. U.S. Dep't of Agric. Animal & Plant Health Inspection Serv. Wildlife Servs.*, 135 F.4th 717, 739 (9th Cir. 2025) ("[W]e vacate the operative EA and FONSI and remand to the district court to enter an order directing the agency to determine whether to prepare a new EA or EIS."); *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.,* No. CV168418PSGFFMX, 2017 WL 10607254, at *7 (C.D. Cal. July 14, 2017) ("Having thus reviewed the relevant case law, the Court finds ample precedent for concluding that the EA and FONSI are 'final agency action[s]' subject to judicial review."). The Court, therefore, rejects this argument and finds that vacatur of the FONSIs and EAs is appropriate.

9 – OPINION & ORDER

But vacatur is not required. *California Cmtys. Against Toxics v. U.S. Env't* 688 F.3d 989, 992 (9th Cir.2012). When equity demands, a court may elect not to vacate an illegal agency decision on remand. *See Humane Soc'y v. Locke,* 626 F.3d 1040, 1053 n.7 (9th Cir.2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action."). To determine whether vacatur would be appropriate in a given case, the Ninth Circuit adopted the standard described in *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146 (D.C.Cir.1993). Under *Allied–Signal*, "[w]hether the agency action should be vacated depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed." *California Cmtys. Against Toxics,* 688 F.3d at 992 (quotation omitted).

Here, the Court finds remanding the FONSIs and EAs without immediate vacatur is appropriate. *See Montana Env't Info. Center v. Haaland*, 2022 WL 2466794, at *13 (D. Mont. Feb. 11, 2022) (finding "the equities weigh in favor of remanding without immediate vacatur" and deferring vacatur for a year), *adopted in relevant part* 2022 WL 4592071 (D. Mont. Sept. 30, 2022); *see also Montana Env't Info. Ctr v. Halland*, No. CV 19-130-BLG-SPW, 2024 WL 1406535, at *5 (D. Mont. Apr. 2, 2024) (granting an extension of the deferral of vacatur where the disruptive consequences of vacatur remained). Intervenor-Defendants have demonstrated that immediate vacatur—during the 2025 spraying season—will result in significant harms to the local community due to drought conditions and damage from last year's wildfires. *See* Intervenor-Defendant's Br. 10, ECF 95. But, as Plaintiffs note, APHIS has historically produced an annual EA for each spraying season. Pls.' Br. 17. Thus, the Court finds that it is likely that the Court can balance the need for new state-level EAs that correct the errors identified by the Court with the disruptive consequences of vacatur by deferring vacatur until the end of the 2025

10 – OPINION & ORDER

spraying season.[6] The parties shall identify a specific deadline for vacatur to take effect in their proposed order and judgment.

### III.    Injunctive Relief

Plaintiffs also seek injunctive relief and asks that the Court impose notification and disclosure requirements for pesticide treatments that are to occur between remand and a new or supplemental EIS.

Interim injunctions "are not preliminary in the conventional sense because the Court has already decided the merits of this case." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, Case No. 3:01-CV-0640-SI, 2017 WL 1829588, at *2 (D. Or. Apr. 3, 2017), *aff'd in part and dismissed in part*, 886 F.3d 803 (9th Cir. 2018) ("*NWF*"). But the relief sought is also not permanent in the conventional sense because it may be lifted after APHIS issues a new or supplemental EIS. *Id.* "Thus, the first prong of the injunction test should be modified to match the analogous prong in the preliminary injunction test: plaintiffs must show that they are 'likely to suffer irreparable harm in the absence of preliminary relief.'" *NWF*, 886 F.3d at 817 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).

To obtain such "interim injunctive measures," Plaintiffs must demonstrate: (1) they are likely to suffer irreparable harm in the absence of the requested relief; (2) remedies available at law, such as monetary damages, are inadequate to compensate Plaintiffs' injury; (3) the balance of hardships between Plaintiffs and Defendants warrants a remedy in equity; and (4) the public

---

[6] The Court notes that APHIS—and the Intervenor-Defendants—do not dispute that a new EA could be completed ahead of next year's spraying season. *See* Intervenor-Defendants Br. 12 (focusing on the disruptive consequences for the 2025 spraying season). Indeed, APHIS acknowledges that vacatur of the FONSIs for Montana and Wyoming would stop spraying activities in those states but makes no argument that vacatur would cause significant harms. APHIS Br. 9-10, 12.

11 – OPINION & ORDER

interest would not be disserved by an injunction. *Id.* Such relief must also be tailored to remedy the specific harm. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) ("We have long held that injunctive relief must be tailored to remedy the specific harm alleged.") (quotation omitted); *Or. Nat. Res. Council v. Devlin*, 776 F.Supp. 1440, 1450 (D. Or. 1991) ("Relief under NEPA must be tailored to remedy the particular violation[,] and courts are not to issue injunctions as prophylactic or punitive measures." ). "[T]he district court has broad discretion in fashioning a remedy." *Melendres*, 784 F.3d at 1265.

Here, even assuming Plaintiffs have met their burden to show that interim injunctive relief is warranted in this case, Plaintiffs' requested relief is not sufficiently tailored to the specific violations found by the Court. The Court in this case found that APHIS violated NEPA. As the Supreme Court recently explained, "NEPA is purely procedural" and "simply prescribes the necessary process for an agency's environmental review of a project." *Seven Cnty Infrastructure Coalition v. Eagle Cnty, Colorado*, 2025 WL 1520964, at *5-6 (U.S. May 29, 2025) ("The only role for a court is to confirm that the agency has addressed environmental consequences and feasible alternatives as to the relevant project."). With the Supreme Court's recent decision in *Seven County* in mind, the Court finds Plaintiffs' proposed remedies—real-time, application-specific notifications of APHIS spraying activities—go far beyond what NEPA requires. The requested remedy is not sufficiently tailored to the violations found by the Court in this case, including—with regard to the Program as a whole—an inadequate consideration of IPM techniques, inadequate baseline information, inadequate consideration of site-specific impacts, and a failure to assess the cumulative effects. Accordingly, the Court declines to award Plaintiffs their requested injunctive relief.

///

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' proposed remedies [89]. Per the parties' joint request, the Court does not vacate the 2019 EIS. The Court will also grant Plaintiffs' requested two-year deadline for completion of an EIS or supplemental EIS consistent with 42 U.S.C. § 4336a(g) and will vacate the relevant Montana and Wyoming FONSIs and EAs. The Court, however, will defer vacatur until the end of the 2025 spraying season. The Court denies Plaintiffs' remaining proposed remedies. The parties shall submit a proposed order and judgment, consistent with this Opinion & Order, within 30 days.

IT IS SO ORDERED.

DATED: June 23, 2025.

_____
MARCO A. HERNÁNDEZ
United States District Judge